UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JESSIE ECHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:04CV1587 SNL |
| ) | (TIA) |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.

**I.  Procedural History**

On February 11, 2002, Claimant Jessie Echols filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 73-80).[1] In the Disability Report Adult completed by Claimant on February 4, 2002, and in the application, Claimant states that his disability began on December 31, 2000, due to a stroke, left-side weakness, arthritis, high blood pressure, arthritic hips, fatigue, and bad legs. (Tr. 73, 77, 119). On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 52-55). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 51). On April 17, 2003, a hearing was held before an ALJ. (Tr. 17-37). Claimant testified and

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with its Answer (Docket No. 11/filed February 14, 2005).

was represented by a non-attorney representative. (Id.). A vocational expert also testified at the hearing. (Tr. 31-35). Thereafter, on June 13, 2003, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 7-16). On September 17, 2004, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision. (Tr. 2-4). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on April 17, 2003

#### 1. Claimant's Testimony

At the hearing on April 17, 2003, Claimant testified in response to questions posed by the ALJ and the non-attorney representative. (Tr. 19-30). Claimant completed ninth grade. (Tr. 21). Claimant is right-handed. (Tr. 26). Claimant testified that he stands at five feet ten inches and weighs 220 pounds. (Tr. 27).

Claimant testified that he stopped working as a truck driver in December, 2000, after having a stroke, because he experienced problems walking and controlling his left arm. (Tr. 20-21). His job did not require much lifting unless something was left in the truck, then the driver had to remove the item. (Tr. 21). Before working as a truck driver, Claimant worked on an assembly line. (Tr. 20). Claimant testified that his work in both jobs required standing and walking eight hours or longer. (Tr. 20).

Claimant testified that after the stroke in 1999 he experienced problems with his speech, memory, and ability to swallow. (Tr. 21, 28). Claimant testified that he has high blood pressure and arthritis in his knees and feet. (Tr. 21-22). Instead of taking a shower, Claimant takes a bath

to reduce the risk of falling due to instability in his left leg. (Tr. 22). Claimant testified that he has pain in his left leg around his hip and groin. (Tr. 22). Claimant can walk comfortably for three to four blocks, but then he has to rest. (Tr. 22-23). Claimant experiences shortness of breath after walking three to four blocks. (Tr. 23). Claimant testified that he takes medication daily for the arthritis in his left arm. Claimant cannot feel anything with his left arm except pain. (Tr. 23).

Dr. Riley last treated Claimant six months earlier for his shoulder. (Tr. 28). Dr. Riley referred Claimant to Dr. Reynolds for treatment of arthritis in his shoulder. (Tr. 28-29). Ever since his stroke, Claimant has diminished feeling in his left hand. (Tr. 29). Claimant testified that he can carry twenty pounds or less. (Tr. 29). With respect to standing, Claimant has no problems except for maintaining balance. (Tr. 30). Sitting in one place for a long time causes Claimant to become sore. Claimant testified that he can sit for twenty minutes before he has to move. Claimant acknowledged that he has never received any treatment from any doctors regarding his back. (Tr. 30).

As to his daily activities, Claimant testified that he spends most of the day "doing little things around the house to keep busy" and to pass the time. (Tr. 24). Claimant helps around the house by vacuuming and doing some of the wash. (Tr. 26). Claimant rides an exercise bike for fifteen minutes. (Tr. 25). With the assistance of his wife, Claimant mows the grass, but he must take a break by sitting down and relaxing every five to ten minutes. Claimant testified that he spends most of his time watching television or listening to the radio. (Tr. 24). On occasion, Claimant goes fishing, but he requires assistance baiting the hook. (Tr. 24-25). Claimant's doctor advised him that his wife should drive him. (Tr. 25). Claimant testified that his speech is not as

clear as it used to be, and the more he talks, the more difficult it becomes for him to speak. (Tr. 25). Claimant walks to the auto shop located three blocks from his house. (Tr. 25).

Claimant testified that he quit smoking in January, 2000, and he consumes a six pack of beer each week. (Tr. 27). In addition to prescription medications, Claimant takes Bayer aspirin. (Tr. 27).

### 2. Testimony of Vocational Expert

Vocational Expert Jeffrey Francis Magrowski, Ph.D., classified Claimant's past relevant work as an assembly line worker and as a truck driver as light, semi-skilled work. (Tr. 31). Dr. Magrowski opined that Claimant's past relevant work would provide transferable skills to jobs similar to assembly and driving types of jobs. (Tr. 31-32).

The ALJ asked Dr. Magrowski to assume that

> ...a hypothetical worker 55 years of age, with a limited education, past work experience as indicated by the evidence in this case, able to lift and carry 20 lbs. occasionally, 10 lbs. frequently, sit for up to six hours in an eight-hour workday, stand and walk for up to two hours in an eight-hour workday, (INAUDIBLE) breaks during that time. The worker would have limited ability for reaching in all directions and pushing and pulling with the left upper extremity. Should not climb ladders, ropes, or scaffolds. Only occasionally use ramps or stairs. Only occasionally balance. Only occasionally stoop, kneel, crouch, or crawl. If you were to assume those limitations, could either of the past relevant jobs be performed?

(Tr. 32). Dr. Magrowski opined that the hypothetical worker could not perform either of the past relevant jobs, but that such worker could perform the jobs, some assembly and driving work, as they are performed in the national economy. (Tr. 32). Next, the ALJ asked Dr. Magrowski to assume not only the factors of the first hypothetical but, in addition, the inclusion of the limitation of limited handling and fingering ability with the non-dominant hand. Dr. Magrowski opined that

such hypothetical worker could not perform assembly work but could perform the driving work as indicated. (Tr. 32). Finally, Dr. Magrowski assumed the additional limitation that the worker could not sit for more than thirty minutes at one time without a break. (Tr. 33). Dr. Magrowski opined that such worker could still perform the driving job as performed in the national economy.

In the next hypothetical, the ALJ asked Dr. Magrowski to assume

> ...the factors from the previous one, added the additional restriction that the worker should not engage in balancing -- and by saying that, I'm assuming that there is some problem with equilibrium which would cause that difficulty, so I'm not quite sure how to phrase that in what you need. But there is no balancing because of possible loss of equilibrium which, I guess, would also indicate avoiding hazards because of the possible loss of equilibrium. Is that of sufficient narrowing to give you something to work with?

Tr. 33). Dr. Magrowski opined that by imposing such factors, the hypothetical worker could not perform any jobs. By eliminating hazards such as machinery, heights, and no balancing because of loss of equilibrium, Dr. Magrowski further opined that he would reach the same conclusion. (Tr. 33). Dr. Magrowski noted that his testimony is consistent with the provisions of the <u>Dictionary of Occupational Titles</u>. (Tr. 33-34).

In response to the representative's request asking him to describe what kind of work drivers perform, Dr. Magrowski noted that the work would be similar to the work Claimant performed after his stroke, e.g., driving vehicles off the line and walking back. (Tr. 34-35). Dr. Magrowski opined that a worker limited to six hours of sitting and two hours of walking could perform a driving job in the metropolitan area such as chauffeuring and other similar jobs. (Tr. 35).

### 3. Open Record

At the close of the hearing, the ALJ determined that the record needed to be further developed and stated that the record would be held open for thirty days so that Claimant's representative could submit updated medical records and a recent x-ray. (Tr. 35-37). A review of the record shows that the representative timely submitted additional evidence from Dr. Bernard C. Randolph including a recent x-ray to the ALJ before he issued a decision denying Claimant's claims for benefits. (Tr. 132-36).

### 4. Forms Completed by Claimant

In the Work History Report, Claimant described his job duties as a driver to include driving trucks off the assembly line upon completion to the yard and then walking back to the line. (Tr. 110-17). After the stroke, Claimant reported experiencing deterioration in health to the point where he retired, because he could no longer "walk to[*sic*] well." (Tr. 117).

In the Disability Report, Claimant acknowledged that he continued to work for a year after the stroke, but that his conditions forced him to stop working on December 31, 2000, due to his inability to walk or stand. (Tr. 119).

In the Claimant Questionnaire dated February 25, 2002, Claimant reported his symptoms of pain, fatigue, shortness of breath, and joint stiffness, starting after he had a stroke. (Tr. 105). Since that time, Claimant indicated that he experiences the symptoms every day and night without any relief. Claimant reported taking his medications as prescribed and not experiencing any side effects form any of his medications. (Tr. 105). Claimant listed as an impairment a driving limitation. (Tr. 106). With respect to household chores, Claimant listed taking out the trash and mowing the lawn. (Tr. 106). Claimant indicated that he had not scheduled an upcoming appointment for medical treatment. (Tr. 108). In the Pain Questionnaire, Claimant reported

taking Tylenol for his pain and listed Celebrex, Metoprolol, and Nifedical XL as his medications. (Tr. 110).

### III.  Medical Records

On July 31, 2000, Dr. Joel Riley first examined Claimant for knee pain. (Tr. 147). Claimant denied having any other complaints. Claimant reported knee pain stemming from a recent trauma from a fall while fishing. Claimant hit his knee on a tree limb. Claimant reported a history of a cerebral vascular accident on the left side of his body in December, 1999, and almost a complete recovery from the cerebral vascular accident. Claimant listed Allopurinol, Metoprolol, Adalat, and Bayer aspirin as his medications. Claimant reported working as a driver. Claimant recently stopped smoking and reported drinking a six-pack of beer every day. (Tr. 147). After examination, Dr. Riley noted osteoarthritis of the right knee and ordered x-rays of both knees. (Tr. 147-48). Dr. Riley prescribed Celebrex as treatment. (Tr. 148). Dr. Riley opined that Claimant's hypertension and history of cerebral vascular accident to be stable. (Tr. 148).

The x-ray taken on August 14, 2000, revealed normal appearing knees and arterial calcifications in the soft tissues posterior to each knee. (Tr. 151).

Claimant returned on October 25, 2000, in a follow-up visit after evaluation for his knee pain. (Tr. 146). Dr. Riley noted that the x-rays revealed arthritic changes and arterial calcifications. Dr. Riley opined that Claimant demonstrated improvement on Celebrex. Claimant denied any other chief complaints at that time. Dr. Riley continued Claimant's Celebrex regimen and directed Claimant to return at a later date for reassessment. (Tr. 146).

On April 10, 2002, Dr. Saul Silvermintz examined Claimant on referral by the Social Security Administration for a consultative physical examination and report. (Tr. 137-40).

Claimant reported quitting work because of a stroke. (Tr. 137). Claimant's chief complaints included stroke, high blood pressure, arthritis in his hips, back, and knee, limited movement on the left side, fatigue, and gout. Claimant reported a fifteen to twenty-year history of hypertension controlled by treatment and medication. Claimant reported having a stroke a year and a half earlier and being treated at Christian Northwest Emergency Room and Barnes Hospital. (Tr. 137). Claimant has residuals from the stroke including a lisp to his speech, dragging of left foot, weakness, fatigue, and inability to stand for long period of time. (Tr. 137-38). Claimant reported pain in both knees and hips, and his left shoulder. (Tr. 138). Range of motion testing revealed normal ranges of motion in both of Claimant's knees. (Tr. 144). Claimant reported being able to walk two to three blocks. Claimant reported taking Celebrex, Nifedical, Allopurinol, and Metoprolol as his medications and consuming three beers each day. (Tr. 138). Examination revealed a marked limitation of range of motion of his left shoulder. (Tr. 139). Dr. Silvermintz noted that Claimant walks with a slight dragging motion of his left leg and an inability to walk on his toes. Dr. Silvermintz reported that Claimant experienced no difficulty getting off the examination table and no problems using his hands and fingers. In the Clinical Impression section, Dr. Silvermintz noted Claimant has a history of hypertension with evidence of end organ damage, status post cerebrovascular accident with minimal residuals, and status post injury left shoulder with residual pain and limitation. (Tr. 139).

    The x-ray of Claimant's left shoulder taken on April 10, 2002, revealed small calcium deposits on his left shoulder with no evidence of fracture. (Tr. 141).

    In the Physical Residual Functional Capacity Assessment completed on April 19, 2002, a senior counselor at disability determinations, listed status post cerebrovascular accident as

Claimant's primary diagnosis, history of hypertension with end organ damage, and status post left shoulder with residual pain and limitation as his secondary diagnosis. (Tr. 85). The counselor indicated that Claimant's exertional limitations included that Claimant could occasionally lift twenty pounds; could frequently lift ten pounds; could stand or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and was unlimited, other than as shown, in lifting and/or carrying. (Tr. 86). In support of his conclusions, the counselor noted how Claimant last received medical treatment in July and October, 2000. The counselor further noted that although Claimant's cerebrovascular injury occurred in December, 1999, with minimal residuals, Claimant continued to work the same job for at least one year after the stroke. The counselor indicated that the medical records establish how Claimant's hypertension and right knee pain are well controlled. (Tr. 86). The counselor indicated that Claimant's postural limitations included that Claimant could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders/ropes/scaffolds. (Tr. 87). The counselor further indicated that Claimant has no established manipulative limitations except for overhead reaching or visual limitations. (Tr. 88). With respect to communicative and environmental limitations, the counselor found none to be established. (Tr. 89). Based on his review of the medical records, the counselor opined that Claimant's symptoms and statements are not partially credible. (Tr. 90). In particular, the counselor stressed how Claimant continued to work at least one year after his cerebrovascular incident at the same job with no accommodations. In addition, the counselor noted that although Claimant alleges little use of his left side, Claimant exhibited no difficulty with his left hand during the consultative examination and minimal difficulty with his left side. The counselor concluded that residual functional restrictions were warranted.

In the Case Action Note dated April 19, 2002, Dr. W. Bruce Donnelly made the following finding: "Based on current physical findings, knee x-rays, and ADL's, this claimant can do light work with occasional climbing and no overhead reaching with his left arm." (Tr. 84).

The May 15, 2002, x-ray of Claimant's left shoulder revealed no fracture or dislocation and Dr. Auer opined in the Impression section an unremarkable study. (Tr. 136).

On May 21, 2002, Dr. Bernard Randolph treated Claimant for his reported cerebrovascular accident in 1999 with left hemiparesis. (Tr. 135). Dr. Randolph's examination revealed relative weakness of the left limbs and tenderness over the left shoulder. Dr. Randolph continued Claimant's medications and ordered a CT of the head and an EKG. (Tr. 135).

After performing the CT scan on May 23, 2002, Dr. James Debnam opined "normal CT scan of the head." (Tr. 134). Hypertensive cardiovascular disease and cerebral vascular accident are listed in the Clinical History section. (Tr. 134).

In the June 3, 2002, treatment note, Dr. Randolph noted that Claimant declined a referral to a rehab doctor even though he advised such referral. (Tr. 132-33).

**IV.    The ALJ's Decision**

The ALJ found that Claimant met the disability insured status requirements for a period of disability on December 31, 2000, the alleged onset date of disability, and continues to meet them through December, 2006. (Tr. 15). The ALJ noted at the time of the hearing, Claimant was fifty eight years of age. (Tr. 10). The ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date of disability. The ALJ found that the medical evidence establishes that Claimant has minimal residuals of a stroke, left shoulder strain, right knee strain, and hypertension, but his medically determinable impairments do not meet or equal one of the

listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4. The ALJ opined that Claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence and are not credible for the reasons set forth in the decision. The ALJ further found that Claimant has the residual functional capacity to perform work except for frequently lifting over twenty pounds, or standing and walking more than two hours in an eight-hour workday. In addition, Claimant requires the option to stand for awhile after sitting for thirty minutes, and he is able to sit for six hours in an eight-hour workday. The ALJ found that Claimant is limited in his ability to reach, push, or pull with his left arm and limited in his ability to handle objects with his left hand, but he has no other exertional or nonexertional limitations. The ALJ opined that Claimant is able to perform his past relevant work as a driver, as usually performed. The ALJ opined based on the vocational expert testimony that Claimant can perform his past relevant work. (Tr. 15). The ALJ thus concluded that Claimant was not under a disability at any time through the date of his decision and is not entitled to a period of disability or disability insurance benefits. (Tr. 15-16).

## V.     Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred in concluding that Claimant could perform his past relevant work.

A. <u>The ALJ's Residual Functional Capacity Assessment</u>

Claimant argues that the ALJ erred in concluding that Claimant could perform his past relevant work.

At step three of the evaluation process the ALJ found that the Claimant has minimal residuals of a stroke, left shoulder strain, right knee strain, and hypertension, but that they do not meet or equal a listed impairment. At step four, the ALJ found that the Claimant is able to perform his past relevant work as a driver as usually performed, and that Claimant's allegations of disabling symptoms precluding all substantial gainful activity are inconsistent with the evidence on the record and not credible. <u>See</u> 20 C.F.R. § 404.1545 (defining RFC as "the most [a claimant] can still do despite" his "physical or mental limitations.") The ALJ found that the Claimant retains the residual functional capacity ("RFC")to perform work except for frequently lifting over ten pounds and occasionally lifting over twenty pounds, or standing and walking more than two hours in an eight-hour workday. In addition, Claimant requires the option to stand for awhile after sitting for thirty minutes, and he is able to sit for six hours in an eight-hour workday. The ALJ found that Claimant is limited in his ability to reach, push, or pull with his left arm and limited in his ability to handle objects with his left hand, but he has no other exertional or nonexertional limitations. Thus, the ALJ determined that the Claimant is able to perform his past relevant work as a driver as usually performed.

"The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004). It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses." SSR 85-16. SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered." SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218. In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a Claimant's subjective complaints. The ALJ must consider all of the evidence presented, including the claimant's prior work record and

observations by third parties and treating and examining physicians as to:

       1.     the claimant's daily activities;

       2.     the duration, frequency and intensity of the pain;

       3.     any precipitating and aggravating factors;

       4.     dosage, effectiveness and side effects of medication; and

       5.     any functional restrictions.

Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). See also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989); Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record." )

      The ALJ's determination of the Claimant's RFC is supported by substantial evidence in

the record. The ALJ properly evaluated the medical evidence in the record, including the consultative report by Dr. Silvermintz, and opined that the medical evidence diminishes Claimant's credibility. The ALJ noted that Claimant did not seek sustained and regular medical treatment for any of his symptoms. In particular, the ALJ noted how Claimant reported to Dr. Riley his only medical complaint concerned knee pain, and Dr. Riley opined that Claimant had almost a complete recovery from his stroke. The ALJ also noted that thereafter, Claimant did not seek treatment for knee pain, and since October, 2000, Claimant has been examined by a doctor on two occasions. The medical evidence establishes that Claimant's hypertension is controlled by medication. The ALJ further noted that the record is devoid of any physician finding or imposing any physical limitations upon Claimant's functional capacity. The ALJ opined that Claimant's assertions regarding the intensity and frequency of symptoms are inconsistent with Claimant's infrequent history of treatment, and the medical records further disclose that Claimant's physical ailments are, or can be, controlled by medication. The ALJ also properly considered the <u>Polaski</u> factors in concluding that "claimant lacks credibility in other respects." (Tr. 13). The ALJ listed facts from the Claimant's hearing testimony regarding the <u>Polaski</u> factors that reflected upon the Claimant's ability to perform past relevant work such as his ability to drive an automobile, to go fishing, to use an exercise bike for fifteen minutes each day, and to mow the lawn and assist with other household chores. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. Those included Claimant's gap in medical treatment, instances of medical noncompliance, his testimony in the hearing regarding his ability to walk three to four blocks before resting and to lift twenty pounds without difficulty, the absence of objective medical evidence of deterioration, the ability to engage in substantial gainful activity

after his stroke, the absence of any doctor finding Claimant disabled or imposing any functional limitations, and his daily activities. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that the Claimant retains an RFC to perform his past relevant work. See Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (in determining residual functional capacity, ALJ must consider medical records, observations of treating physicians and others, and claimant's own descriptions of her limitations). The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Notably, Claimant was free to provide evaluations supporting his contentions. See 20 C.F.R. § 404.1512(c) ("Your responsibility.... You must provide evidence show how your impairment(s) affects your functioning during the time you say that your are disabled, and any other information that we need to decide your case."); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) ("A disability claimant has the burden to establish [his] RFC.").

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed

and that Claimant's complaint be dismissed with prejudice.

The parties are advised that they have eleven days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal the questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  18th  day of January, 2006.

             /s/ Terry I. Adelman
            UNITED STATES MAGISTRATE JUDGE